## MURPHY v. NORTHERN STEAMSHIP CO.[1]

1. Contracts — Recovery of Wreck — Salvage — Expenses — Instructions to Jury.

Plaintiff contracted to recover a sunken vessel and cargo belonging to defendant for 70 per cent. of the salvage; defendant stipulating that it should not assume any risk or bear any share of the expense in connection with the recovery. The vessel was sunk in Canadian waters, and both parties knew that a person, under authority from the Canadian government, had undertaken to recover the wreck, as a menace to navigators, and was claiming rights therein. In order to prosecute plaintiff's work, it was necessary for him to institute injunction proceedings against such person; and defendant was made a party complainant therein, with the acquiescence of its general manager. *Held*, that there was no warranty of title by defendant as against the claim of such person, and hence it was not error to charge that, before the jury could impose the entire burden of this litigation on defendant, they must find an express agreement by it to assume the same.

2. Same—Accounting.

The jury having found an implied contract on the part of defendant to pay its proportionate share of the expense of such litigation, it was entitled to an accounting, in which the amounts already paid by it should be considered.

3. Same.

On such accounting, plaintiff was not entitled to charge for his own services; nor could any part of the loss resulting from a levy on defendant's boat to collect a judgment rendered in such litigation be charged against plaintiff.

Error to Wayne; Waite, J. Submitted October 24, 1901. (Docket No. 78.) Decided June 24, 1902.

*Assumpsit* by Thomas Murphy against the Northern Steamship Company for moneys expended and services rendered. From a judgment for defendant, plaintiff brings error. Modified.

---

[1] Rehearing denied January 5, 1903.

*Moore & Moore* (*Chester M. Culver* and *Henry B. Shaw*, of counsel), for appellant.

*Shaw, Waite, Cady & Oakes*, for appellee.

HOOKER, C. J. Defendant, being the owner of a vessel and cargo sunk in the Canadian waters of Lake Erie, had some negotiations with the plaintiff in relation to saving the same in 1892. Either before or soon after, the plaintiff became aware that one Hackett had done some work upon the wreck under a contract with the Canadian government, which treated the wreck as a menace to navigators. He thereupon had negotiations with Hackett, who claimed to have a lien upon or an interest in the wreck of $7,500 or upwards, and offered to sell his right to the plaintiff for that sum. The plaintiff thereupon employed a lawyer named Kidd to obtain a revocation of Hackett's authority, and both Hackett and the government were notified by the defendant that it owned the wreck, and would have it removed.

On April 18, 1893, the plaintiff sent a proposition to the defendant as follows:

"DETROIT, MICH., May 16th, 1892.
"JOHN GORDON, Esq.,
        "Manager Northern Steamship Co.,
                "Buffalo, N. Y.
    "*Dear Sir:* I propose to take the cargo of stone out of the sunken schooner Fayette Brown, and to raise the vessel, if the same proves, upon examination, to be worth raising, for seventy per centum (70%) of the net value, when sold, of the cargo and vessel, or whatever portion of the wreck is saved. This is, as I understand, the agreement we arrived at when I saw you in Buffalo on the 13th inst. If it is as you understand it, please sign and return same to me, and oblige,
                "Very truly yours,
                        "THOS. MURPHY.
    "The above is accepted by ——.
    "(Duplicate.)"

It was accompanied by the following letter:

"Detroit, Mich., April 18th, 1893.
"John Gordon, Esq.,
          "Manager Northern Steamship Co.,
                    "Buffalo, N. Y.

"*Dear Sir:*  Inclosed I hand you proposals in duplicate for raising the schooner Fayette Brown, as per our agreement of May 13, 1892, and have dated them at that time, and also inclose a certificate of contract for your signature, which I want, so I can show my authority for working on the wreck, without producing the agreement, in the event of Hackett or others disputing my rights to recover the property.  I have been delayed on this job, owing to the fact of the Canadian government having instructed Mr. Hackett to remove the wreck, but now have, through the efforts of our attorney (Geo. E. Kidd, of Ottawa), obtained an order prohibiting Hackett from doing any further work on the wreck; but that order was obtained last season, too late for us to do any work.  The amount we paid Mr. Kidd for his services in this direction was $225. Have you paid him anything for the same services?  We have been in hopes that the bill before the two governments relating to reciprocal wrecking privileges would have been proclaimed a law before this time, but as yet they have not; but we have made arrangements by which, if the bill is not proclaimed, we will begin work with Canadian apparatus as soon as the weather will permit.
                    "Very truly yours,
                    "Thomas Murphy,
                         "Per E. F. Krell."

The proposition was returned with the following indorsement:

                                        "May 16th, 1892.
"To Whom It May Concern:
"This is to certify that we have entered into a contract with Thomas Murphy, of Detroit, Mich., to raise the schooner Fayette Brown, sunk about 9½ miles east of Pt. Au Pelee, Lake Erie.
          [Signed]     "John Gordon,
     "General Manager Northern Steamship Co."

A letter went with the acceptance, *i. e.:* .

"BUFFALO, N. Y., April 21, 1893.
"THOMAS MURPHY, Esq.,
"Detroit, Mich.
"*Dear Sir:* Yours of the 18th inst. at hand and noted. I return you herewith, signed, the understanding of May 16th, 1892; it being, of course, distinctly understood that Northern Steamship Co. assumes no risk, nor bears any share of the expense, in connection with your recovery of the wreck and cargo of Fayette Brown, but that it (N. S. S. Co.) shall be entitled to 30 per cent. of the salvage, and shall also have a voice in the sale of hull and cargo which may be recovered.

"I have paid Mr. Kidd nothing in connection with the matter, as he has performed no service for this company.

"I also inclose you herewith authority for rescuing Fayette Brown and cargo.

"Yours truly,
"JOHN GORDON,
"Gen'l Manager."

Also:

"BUFFALO, N. Y., April 22d, 1893.
"THOS. MURPHY, Esq.,
"Detroit, Mich.
"*Dear Sir:* Herewith I inclose you authority for raising schooner Fayette Brown and cargo, same having been omitted from my letter of yesterday to you.

"Yours truly,
"JOHN GORDON, Gen'l Manager.
"F. P. G.
"Ans. Apl. 24, '93."

Thereupon the plaintiff proceeded to raise the cargo, and in a short time had it up. He abandoned the vessel as not worth raising. Defendant's share of the cargo amounted to about $2,000, and this has not been paid.

At the time plaintiff sought to commence operations under his contract, he met with some opposition from Hackett, and filed a bill in chancery in a Canadian court to enjoin Hackett and one Heminger from interfering with the wreck or its cargo. At the time said suit was

begun, the plaintiff wrote to the defendant, stating that he had found it necessary to enjoin Hackett, and to make defendant a party complainant, and hoped that it would be agreeable to defendant. The following is a copy of the letter:

"Detroit, Mich., July 19, 1893.
"The Northern Steamship Co.,
"John Gordon, Mgr.,
"Buffalo, N. Y.

"*Dear Sir:* I have been obliged to get out an injunction in the Windsor courts restraining Hackett & Heminger against taking stuff out of the Fayette Brown. They found I was ready to go to work with a Canadian outfit, and went there with a Canadian tug and two American vessels to work at her; and I immediately got out an injunction and served it upon them, and they quit work and went back to Amherstberg. I inclose you herewith an affidavit to be signed by you and sworn to before a notary public; and, if you should be away, I hope some one next to you in authority will sign and return the same. I will telegraph you tomorrow whether to send the affidavit back to Fleming & Wigle, of Windsor, or McCarthy, Osler & Co., of Toronto. The injunction case is to be argued in Toronto on Friday next, unless the defendants will consent to have it tried here in Windsor. I have been ready for some time to wreck the Brown with a Canadian outfit, and have been hindered by this interference of Hackett. I, however, have started the outfit this morning, and they will be at work by tomorrow. I wrote to Ottawa to know if Hackett had been given any permission to wreck the vessel, and I have word from there this morning that he had no permission whatever, and would not get any. Through spite, he may serve an injunction on me when I get to work, and interfere to the extent of a day or two's time; but I feel it is all bluff on his part, and that we will go on now and recover the vessel and cargo. As I wrote you some weeks ago, I made an examination, and found the vessel in fair shape, and worth raising. This season, so far, has not been a good one outside, as it has been windy, and only about one day in three could we have worked at the wreck; and this is partly the reason why I did not begin on the wreck sooner, but I hope to have both vessel and cargo in about one month. It was necessary for me to make the Northern

Steamship Company a party to this suit, which I hope is agreeable to you, as it is for our mutual interests, and I have given security for costs and all that.    Forward this document at once, as the case is to be heard either in Toronto or Windsor on Friday.

"Yours very truly,<br>"THOS. MURPHY."

Defendant's manager returned the affidavit, which is as follows:

"IN THE HIGH COURT OF JUSTICE, COMMON PLEAS DIVISION.

"Between
THE NORTHERN STEAMSHIP
    COMPANY and
THOMAS MURPHY,
                        Plaintiffs,
        and
F. B. HACKETT and
A. HEMINGER,
                    Defendants.

"I, John Gordon, of the city of Buffalo, in the State of New York, one of the United States of America, general manager, make oath and say:

"1. That I am general manager for the Northern Steamship Company, one of the above-named plaintiffs, and have a knowledge of the facts hereinafter stated.

"2. The Northern Steamship Company are the owners of the schooner Fayette Brown and her cargo.

"3. The said schooner Fayette Brown was wrecked in the summer of 1891 about ten miles east of Point Pelee, in Lake Erie, in the province of Ontario.

"4. The said company have been continually since the said date endeavoring to arrange matters so that they could make a contract to raise the said schooner and cargo.

"5. The said schooner is worth about the sum of $16,-000, and the value of the cargo is in the neighborhood of $10,000, and the said company have not in any manner abandoned the said schooner or cargo.

"6. I believe the said schooner is not lying as an obstruction or impediment to navigation, being in 54 fathoms of water, without her masts or rigging.

"7. The said plaintiff company did on or about the 16th day of May, 1892, enter into a contract with their coplaintiff, Thomas Murphy, to save the schooner and cargo on the said schooner, and have not given any other person or persons any contract or right to interfere with the said cargo or vessel.

"8. That I am informed and verily believe that the defendant Hackett has stripped the said schooner of her anchors, chains, masts, sails, rigging and tackle, apparel and furniture, and committed other depredations on the said schooner, and refuses to deliver up possession of the same to the plaintiffs.

"9. That, through the interference of the said Hackett with the said schooner, the plaintiffs have suffered loss and damage to the amount of $3,000, and are apprehensive of further serious loss and damage if the defendants are not restrained by this honorable court from in any way interfering with the said schooner or her cargo.

"10. That the plaintiff Thomas Murphy is agent for his said coplaintiff, the said company, in this action.

"Northern Steamship Company,

"By John Gordon,

"Gen. Mgr. Northern Steamship Company."

The commencement of this suit enabled plaintiff to prosecute the work, which was soon finished; but the litigation continued much longer. The defendants in that cause filed a cross-bill alleging a lien upon the cargo, and a decree was rendered for $8,000 in their favor. From this the complainants appealed, and subsequently this decree was reduced to $3,000, which the defendant in the present cause paid. Afterwards Murphy and this defendant were sued by the lawyers who conducted the chancery case for them, and a judgment was rendered against them for solicitors' fees. This was also paid by the defendant. At the commencement of the present case the plaintiff had in his possession all of the proceeds of the wreck. The defendant had not only received nothing, but had paid out several thousand dollars upon the litigation referred to, and in addition to this the plaintiff now asks that defendant not only reimburse him for moneys expended by

him in the conduct of the litigation, but also pay him for time spent in looking after it.    A verdict was rendered in favor of defendant, and the plaintiff has appealed.

The contract in this case is in writing, and it was executed in 1893, though dated in 1892.   From the letter which accompanied the acceptance of plaintiff's proposal, which constitutes a part of the agreement, it is plain that the defendant did not undertake to warrant a title against Hackett.   The parties understood that there was a claim made by him, and the terms of the agreement preclude the construction contended for by plaintiff;   *i. e.*, that the defendant undertook to protect the property against such claim.   The plaintiff, with full knowledge of the situation, undertook to raise this wreck for a share of the proceeds, taking all of the risk; and he was notified, with the acceptance, that the defendant repudiated any suggestion of liability for expenses that plaintiff had already incurred in an attempt to prevent Hackett from interfering further. There was not only no representation of title, but plaintiff knew of Hackett's claim, and had been negotiating for it. Unless there was something that occurred after the making of the contract to create a liability upon the defendant, the plaintiff has no claim.   It is true that he testified that in 1892 Gordon authorized him to take any steps he saw fit to recover the property from Hackett, but this was nearly a year before the contract was executed.   It constituted no authority to commence the injunction proceedings.   We find nothing in the record that justifies an inference that the defendant undertook to defend the plaintiff against the claims of Hackett, and the plaintiff was not injured by the charge that the jury must find an express agreement to do so before it could impose the entire burden of this litigation upon the defendant.   In permitting the jury to find an implied contract to pay its proportionate share of the cost of defending the property against a lien, the court went as far as the plaintiff had a right to ask, and upon that theory the defendant was entitled to an accounting, in which the expenses of litigation paid by

itself should be taken into consideration. The theory upon which this verdict was found seems to be that the amount realized from the wreck was increased by the reduction and payment of the lien, and that, as this increase was shared by the parties, the expense attendant upon such reduction and payment was mutual, as was also the expense of litigating with the attorneys, and payment of their judgment. We have already said that the contract between the parties imposed upon the plaintiff a share of the risk of this lien, and that he cannot claim that defendant guaranteed the title against it. If this is so, he could not require the defendant to do more than to join him in protecting their mutual interests, and the law would imply nothing more in the absence of an express undertaking by the defendant to do more.

We think the court did not err in refusing to permit plaintiff to charge against the defendant an item of $200 which was apparently within his own control; and it was not error to deny him compensation for his services rendered in litigation relating to the mutual interest of the parties, unless the testimony justified the inference of an understanding that he should be paid. The question was left to the jury.

The item of $525 was properly excluded, for both parties had the benefit of it in the litigation with Hackett.

We are of the opinion that there was not sufficient proof to warrant the submission of the items of disbursements by the defendant to the jury. They came to the defendant through the usual course of business, duly certified, and were paid, and seem not to have been disputed; but there was an absence of affirmative proof that the services for which such payments were made were in fact rendered.

Again, it was error to charge against the plaintiff any share of loss resulting from a levy upon defendant's boat to collect the Canadian judgment.

We are constrained to reverse the judgment, and order a new trial, unless the defendant shall file a consent to

remit 70 per cent. of the said items (*i. e.*, $606.53), which amounts to $424.57. If such consent shall be filed in this court within 30 days, the judgment will be affirmed, but the plaintiff will recover costs of this court.[1]

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.

---

131   129
139   309

---

[1] Consent to remit was duly filed.